UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT WILLIAMS,

                Plaintiff,                    NOT FOR PUBLICATION
                                                                  **MEMORANDUM & ORDER**
      -against-                             10-CV-2127 (CBA) (LB)

CITY UNIVERSITY OF NEW YORK,
BROOKLYN COLLEGE,

                Defendant.
------------------------------------------------------------x
AMON, Chief United States District Judge:

       The plaintiff Robert Williams, proceeding pro se, is an African-American graduate student at the City University of New York, Brooklyn College ("the College"), and is on academic probation. He alleges that his continued probation is a result of racial discrimination and retaliation and asserts claims against the College under Title VI of The Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. On February 9, 2011, the Court granted the College's motion to dismiss Williams's original complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). In light of Williams's pro se status, the Court granted Williams leave to replead to cure the pleading deficiencies in the original complaint. Williams submitted an amended complaint dated February 23, 2010.

       Before the Court is the defendant's motion to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6). For the following reasons, the College's motion to dismiss the amended complaint is granted. Leave to replead is denied.

## BACKGROUND

**I.**     **Original Complaint**

       The Court assumes familiarity with its February 9, 2011 Memorandum and Order

("Order"), which describes Williams's original complaint in detail. See Docket Entry # 44. Briefly, this action arises from Williams's performance in a masters program at the College. He enrolled in June 2008 and, sometime before the spring 2010 term, his grade point average fell below a 3.0. Pursuant to the College's minimum grade requirements, Williams was placed on academic probation and barred from registering for classes offered during the fall 2010 term.

Williams alleged in his original complaint that he ended up on academic probation not because of his performance, but rather "because of his professor's [sic] intentional discrimination." The original complaint alluded to two allegedly discriminatory history grades. (Compl. ¶¶ 9–10.) Williams appealed those grades to the appropriate Grade Appeals Committee but it "failed to remedy" the "intentional discriminatory grading acts." (Id. ¶ 10.) On March 5, 2010, Williams complained to the Faculty Council Committee on Graduate Admissions and Standards about the Grade Appeals Committee's decision on the grounds that the decision constituted racial discrimination and disparate treatment. The Faculty Council Committee did not grant him any relief.

As part of an effort to remove the registration bar, Williams sent a "plan of action" to the head of the history department, Professor Steven Phillips, and to Anselma Rodriguez, the coordinator of graduate studies. (Id. ¶¶ 11-12.) Rodriguez was responsible for assessing the plan and, if she approved it, could lift the registration bar. After reviewing the proposed plan, Rodriguez refused to lift the bar, explaining that she was waiting for Williams's final grades for the spring term to post before making a decision, so that she could evaluate his progress. (Id. ¶ 12.) According to the original complaint, Williams asked Rodriguez to reconsider her decision, and he told her that he thought she was refusing to lift the bar in retaliation for a complaint that Williams had filed against her nearly a year earlier, in May 2009, with the

Department of Education's Office for Civil Rights.  (Id.)

On April 21, 2010, Williams met with Louise Hainline, the graduate dean, to discuss having the registration bar lifted.  During that conversation, according to Williams, Hainline said that his academic average was 2.67.  Williams alleged that this description was inaccurate and retaliatory, as his average was in fact 2.8 (Williams and Hainline allegedly disagreed about whether a grade earned in an out-of-program physical education course should count towards Williams's average).  During that conversation, Hainline also told Williams that his relationship with the College was governed by the 2008 student handbook, not the 2004–07 handbook that Williams alleged is more favorable to students in his position.

Based on these allegations, Williams filed his original complaint on April 29, 2010, asserting claims under Title VI.  Williams moved for a preliminary injunction requiring the College to lift the registration bar so that he could register for courses and raise his academic average.  The Court denied the motion at a hearing held August 10, 2010.

## II.     Dismissal of the original complaint

On February 9, 2011, the Court granted the College's motion to dismiss the original complaint for failure to state a claim.  With respect to the discriminatory grading claims, the Court ruled that Williams had "not sufficiently pleaded that the College did anything to him 'on the basis of race' in connection with the two history grades that are at issue in this suit."  (Order at 7.)  The Court noted the absence of "any allegations that any College employee 'made any remarks that could be viewed as reflecting discriminatory animus' or that any non-African American students 'were given preferential treatment when compared to' Williams."  (Id. at 8 (quoting Patane v. Clark, 508 F.3d 106, 112–13 (2d Cir. 2007).)  The Court found that Williams essentially had alleged only that he was African-American and that the College was enforcing its

policies against him, and that such allegations could not withstand a motion to dismiss.

With respect to the retaliation claims, the Court ruled that Williams had "not alleged any facts that suggest a causal link" between his May 2009 civil rights complaint against Rodriguez and the April 2010 refusal to lift the registration. (Id. at 9.) Crucially, the complaint did not "allege 'a causal connection directly through proof of retaliatory animus' or indirectly by 'disparate treatment' of non-complaining students." (Id. at 10 (quoting Delgado v. Triborough Bridge & Tunnel Auth., 485 F. Supp. 2d 453, 462 (S.D.N.Y. 2007)).) The Court also ruled that Williams could not rely on a temporal proximity of his earlier complaint of discrimination and the allegedly retaliatory act because "the nearly one year that elapsed between the complaint and the alleged retaliation 'suggests, by itself, no causality at all.'" (Id. (quoting Clark Cnty. Sch. Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001)).)

With respect to the other allegedly retaliatory acts, the Court ruled that the acts were not sufficiently material to support a retaliation claim, and, even if they were, Williams had not alleged facts suggesting that the acts were causally related to his complaint of discrimination. (Id. at 10–11.)

**III.   Amended Complaint**

Although the Court saw no indication that Williams could plead a plausible claim to relief, it permitted Williams leave to replead in light of his pro se status. Williams subsequently filed the amended complaint on February 23, 2011.

Like the original complaint, the amended complaint contends that Williams received discriminatory grades in two history courses. In addition, it contains new allegations that he has been subjected to discriminatory grading standards in general at the College. The amended complaint alleges that the "graduate courses Plaintiff registered for were dominated by

4

Caucasian students and Caucasian Professors" and that "African American Student's [sic], significantly, African American males[,] were primarily non-existent." (Am. Compl. ¶¶ 15–16.) This racial disparity allegedly worked to Williams's disadvantage, as, "among other things, there was no one to provide impartial decision making when Plaintiff filed grievances concerning final grades and inferior treatment." (Id. ¶ 17.)

He alleges that "the History Department professors failed to follow the objective standard policies in the graduate bulletin and the objective standard policies on their own syllabus, giving Caucasian students the advantage and Plaintiff the disadvantage." (Id. ¶ 22.) He further alleges that, when he appealed his two allegedly discriminatory history grades, the Chair of the History Department refused to consider his challenge to one grade, and the Grade Appeals Committee denied the challenge to the other. (Id. ¶ 25.) In denying the appeal on the merits, the Grade Appeals Committee allegedly responded in terms that "implied and suggested an 'ignorant lazy nigger,'" and it did this with "full knowledge of the plight of the negative connotations, depictions and stereotypes that are used traditionally and contemporaneously of African Americans in the United States." (Id. ¶¶ 32–33.) Williams again alleges that he complained about the denied appeal to the Faculty Council Committee on Graduate Admissions and Standards and that it failed to remedy the situation and instead "supported the racial discrimination and tainted the Plaintiff's ability to pursuit [sic] his degree." (Id. ¶ 36.)

After recounting all of this, the amended complaint alleges that "Caucasian students were held to superior objective policies," that "Plaintiff was held to a racially subjective grading standard," and that the "double standard reflects academic grading and policies designed to give preferential treatment to certain students at least in part because of their ethnic background." (Id. ¶¶ 40–43.)

5

The amended complaint also alleges retaliation, but on a different theory than the original complaint. The amended complaint identifies as Williams's protected conduct not his May 2009 civil rights claim against Rodriguez, but rather his later March 2010 complaint to the Faculty Council Committee about the history department's allegedly race-based denial of his grade appeal. (Id. ¶¶ 49, 52.) The amended complaint alleges that the College retaliated for that March 2010 complaint in four ways: (1) in April 2010, Rodriguez refused to lift the registration bar until Williams's final grades posted; (2) Hainline audited Williams's academic records; (3) in or about June 2010, the College offered to reinstate Williams on the condition that, if he did not receive two grades of A, he would be asked to leave the masters program; and (4) Hainline told Williams that he was bound by the allegedly less student-favorable 2008 student handbook. (Id. ¶¶ 52–78.)

By papers dated March 18, 2011, the College moved to dismiss the amended complaint. Williams opposed the motion by papers dated April 20, 2011 and also requested leave to amend his complaint for a second time. He provided the Court with a proposed second amended complaint. The College filed reply papers and opposed the motion to amend.

## DISCUSSION

### I.   Standard on Motion to Dismiss

Pro se pleadings "must be read liberally and should be interpreted to raise the strongest arguments that they may suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted), but they remain, as any other complaint, vulnerable to dismissal under Rule 12(b)(6). See, e.g., Brickhouse v. City of New York, 09 Civ. 9353, 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010) ("Pro se plaintiffs nevertheless remain subject to the general standard applicable to all civil complaints . . . .").

To withstand a motion to dismiss for failure to state a claim under that rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965.  Neither will a complaint that contains only "naked assertion[s]" without "further factual enhancement." Id. at 1966.

Iqbal identifies a "two-pronged" approach to determining the sufficiency of a complaint. 129 S. Ct. at 1950.  First, courts can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Second, they can then identify whether the complaint, stripped of its conclusory pleadings, "plausibly give[s] rise to an entitlement to relief." Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

## II.    Discrimination claim

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  To state a claim under Title VI, a plaintiff must plead, among other things, "that the defendant discriminated against him on the basis of race, that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's

7

actions." Tolbert v. Queens College, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).

Even construing the amended complaint liberally, the Court concludes that Williams has not remedied the pleading deficiencies of the original complaint. Like the original complaint, the amended complaint contains only conclusory allegations of discrimination. Although the amended complaint broadens the basis of the discrimination claim to include differential grading standards allegedly applied by the College in all courses, as opposed to just two history courses, no facts are alleged that would support this modified claim that African-American students were "held to a differential subjective standard that did not apply to Caucasian student[s] who are not satisfied with their final grades." (Am. Compl. ¶ 27.) The amended complaint does not contain any factual allegation sufficient to allow a plausible inference that the College's actions were motivated by discriminatory animus. See Sanders v. Grenadier Realty, Inc., 367 F. App'x 173, 175 (2d Cir. 2010) ("While [the complaint] does allege facts consistent with a discrimination claim, *i.e.*, that non-black residents were granted subsidies, it nevertheless stops shorts of the line between possibility and plausibility of entitled to relief because plaintiffs do not allege any facts supporting an inference of racial animus.") (internal quotation marks and citation omitted).

Plaintiff claims that the Grade Appeals Committee's response denying his grade appeal was racist. (Id. ¶ 32.) However, the letter Williams received from the Grade Appeals Committee, which the Court can consider at this stage of the litigation, McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007), does not say anything about Williams's, or anyone else's, race. Rather, it says that the Grade Appeals Committee "found the grading exceedingly generous" and that Williams's paper was "unworthy" of even the B-minus that it received because the "paper barely addressed the question, was lacking in analysis, and relied

8

upon uncited sources," and the "writing was incoherent, and the structure, grammar, and logic would have been considered disappointing in the work of an undergraduate." (Enloe Decl. Ex. A.) Although Williams may not have appreciated the Grade Appeals Committee's assessment of his work, this race-neutral explanation for his grade does not give rise to a plausible inference of an underlying racial motivation for the grading decision. See Pearson v. Bd. of Educ., 499 F. Supp. 2d 575, 593 (S.D.N.Y. 2007) ("no reasonable jury could concur that . . . calling another African-American teacher uncivilized . . . is the equivalent of using a racial epithet"); Beshty v. Gen. Motors, 327 F. Supp. 2d 208, 214 (W.D.N.Y. 2004) ("no evidence that these statements [that plaintiff did not fit the company "culture"] were indirect references to plaintiff's national origin, race, or religion, aside from plaintiff's speculative, subjective interpretation").

  Finally, the allegations in the amended complaint about the predominately Caucasian faculty and student body at the College do not render Williams's claims of discrimination any more plausible. There is no allegation that the number of African-Americans at the College is the result of racial discrimination, or any factual allegation that would support an inference that Williams would have been treated differently if he was white. See Washington v. Martinez, No. 03 Civ. 3529, 2004 WL 632705, at *6 (E.D. Pa. Jan. 28, 2004) ("[a]lthough plaintiff was the only African American in the office she has presented no evidence that she would have been treated differently had she been a white person"); Davis v. Oyster Bay East, No. 03-CV-1372, 2006 WL 657038, at *10 (E.D.N.Y. Mar. 9, 2006) ("[T] mere fact that Plaintiff was the only African American stenographer, without more, is insufficient to establish pretext.").

  At a bare minimum, Rule 12(b)(6) requires more than the allegation that a member of a protected class is unhappy with the way that he has been treated by an entity subject to the federal civil rights laws. Coleman v. brokersXpress, LLC, No. 08 Civ. 5085, 2009 WL 275474,

at *2–3 (S.D.N.Y. Feb. 4, 2009) ("Put simply, Coleman alleges little more than that he is Jewish and that he was terminated." (internal quotation marks and bracket omitted)). The amended complaint alleges that Williams is African-American, went to school in an environment that was predominately Caucasian, and received certain grades he was not happy with. These allegations, without more, do not state a claim for racial discrimination.

### III. Retaliation claim

To state a claim for retaliation under Title VI, a plaintiff must plausibly allege "(1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action." Simpson v. Uniondale Union Free Sch. Dist., 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010). An "adverse action" is sufficiently material to sustain a retaliation claim when that action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006); see Pacheco v. New York Presbyterian Hosp., 593 F. Supp. 2d 599, 629 (S.D.N.Y. 2009) (granting summary judgment to the defendant on a Title VI retaliation claim because the plaintiff had not established materiality).

Even construing the amended complaint liberally, the Court concludes that Williams's allegations of retaliation are not sufficient to survive a motion to dismiss under Rule 12(b)(6). The principal retaliatory action alleged is the College's failure to lift the registration bar until Williams's final spring grades had been posted. However, there are no factual allegations in the complaint that would allow a reasonable inference that this action was motivated by retaliatory animus, nor are there allegations suggesting that this policy was disparately applied to Williams as compared to non-complaining students. Delgado v. Triborough Bridge & Tunnel Auth., 485

F. Supp. 2d 453, 462 (S.D.N.Y. 2007) (dismissing retaliation claim that failed to sufficiently plead disproportionate treatment or retaliatory animus).

Williams has attempted to strengthen the retaliatory inference that might be drawn from the temporal relationship between his protected activity and the allegedly retaliatory act by redefining his protected activity as his March 2010 complaint to the Faculty Council Committee, which occurred one month before Rodriguez refused to lift the registration bar.  The Court does not believe that that revision saves the complaint.  Although a plaintiff may rely on temporal proximity to demonstrate causation, "where a plaintiff is demonstrably at risk of the adverse action in advance of the protected activity, he cannot show on the basis of temporal proximity alone that [] the adverse action resulted from the conduct." Catanzaro v. City of New York, Nos. 10 Civ. 1825, 10 Civ. 1827, 2011 WL 335648, at *7 (S.D.N.Y. Jan. 25, 2011) (internal quotation marks and brackets omitted).  The original complaint alleged that Rodriguez had previously— before Williams engaged in the allegedly protected conduct in March 2010—refused to lift a registration bar until Williams's final grades posted so that she could evaluate his plan of action with an informed view of his academic progress.  In view of Rodriguez's established practice, Williams was "demonstrably at risk" of having to wait for spring term grades to post before the registration bar would be lifted, and he therefore cannot rely on temporal proximity alone.

With respect to the other allegations of retaliation, the Court again concludes that those allegedly adverse acts, which are not alleged to have had any practical consequences whatever, are not sufficiently material to support a claim for retaliation.  Moreover, there are again no allegations to plausibly suggest that these acts were taken in response to Williams's allegedly protected activity.

11

## IV.     Leave to Replead

"[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." Hayden v. Cnty. of Nassau, 180 F.3d 42, 52 (2d Cir. 1999). "Leave to amend is especially inappropriate where . . . proposed amendments merely recycle[] versions of claims which ha[ve] already fallen victim to a motion to dismiss." Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007).

The Court has reviewed Williams's Proposed Second Amended Complaint and finds that it does not cure any of the pleading deficiencies explained herein. The Proposed Second Amended Complaint contains new factual allegations explaining the events underlying his claims, including how and when he received two low grades in his history classes. However, none of these new factual allegations provide any further support for his contention that the grades were motivated by racial animus. To support his claims for racial discrimination and retaliation, Williams makes the same conclusory and vague allegations (without giving any examples) that Caucasian students received superior treatment, and he again relies on the fact that his classmates and professors were primarily Caucasian.

As the Court noted in its first order dismissing this case, the Court explored the plaintiff's case in some detail at the hearing on Williams's motion for preliminary relief, and found it lacking. Because the Court finds that Williams is unable to demonstrate that he could amend his complaint in a manner that would survive dismissal, the Court denies leave to amend as futile.

## CONCLUSION

The motion to dismiss is granted. The motion for leave to replead is denied. The Clerk of Court is directed to enter judgment and to close this case. The Court certifies pursuant to 28

U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       December 30, 2011

/s/
Carol Bagley Amon
United States District Judge

13